In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00280-CV
_____

FORD MOTOR COMPANY, BRIDGESTONE AMERICAS, INC. AND BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, Appellants

V.

NATIVIDAD CARDENAS CEJAS, ET AL, Appellees

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. A-195,335**

## MEMORANDUM OPINION

Appellants Bridgestone Americas, Inc. and Bridgestone Americas Tire Operations, LLC (collectively Bridgestone) and Ford Motor Company (Ford) filed an interlocutory appeal from the trial court's denial of Appellants' special appearances. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2017). We reverse the portion of the trial court's order denying Appellants' special

appearances and render judgment dismissing Appellees' claims against Appellants for lack of personal jurisdiction.

## Background

In 2006, Rafael Cardenas, a Mexican resident, was killed in a car accident in Mexico. At the time of the accident, Rafael was a passenger in a 1995 Ford Explorer, owned and driven by Antonio Lopez Espinoza.[1] In 2007, Plaintiffs, Mexican residents and heirs of Rafael Cardenas, filed a suit in cause number E178023 in the 172nd District Court of Jefferson County, Texas, against Ford and Bridgestone alleging a claim against the defendant Bridgestone for defects in the tires that were on the 1995 Ford Explorer and negligence relating thereto, and against Ford for placing a defective vehicle into the stream of commerce and for other claims, including claims relating to "rollover resistance." In May of 2007, the case was transferred as a "tag-along case" to the 410th District Court of Montgomery County, as part of the *In re Bridgestone/Ford* Multidistrict Litigation (the "MDL court") and assigned "Individual Cause No. 07-03-03185[.]" In the MDL court, Ford and Bridgestone moved for a dismissal based on the forum non conveniens doctrine and asserted that Mexico was the proper forum. The MDL court dismissed the case on December 6, 2010, based upon forum non conveniens. The dismissal order stated

---

[1] Espinoza is not a party to this appeal.

that if Plaintiffs wanted to proceed with their claims in Mexico, they could file their petition in the Mexican court. The dismissal also provided, in relevant part, the following:

> In the event that, despite Plaintiffs' good-faith efforts to file their Petition or Complaint pursuant to the foregoing Order, the Mexican court declares itself incompetent to preside over the case, the Court orders that Plaintiffs shall not be barred from re-filing and trying their claims in the appropriate court in the State of Texas and proceeding before this Court.

> . . . .

> If Plaintiffs invoke this return jurisdiction clause and re-file in the State of Texas, Plaintiffs may refile their case in Jefferson County, and this Court shall at that time have jurisdiction to determine whether the conditions for invoking the return jurisdiction clause have been met.

Thereafter, on February 12, 2014, the Plaintiffs filed Plaintiff's Original Petition and Request for Disclosure in Jefferson County, Texas, and the suit was assigned cause number A-0195335 (hereinafter the "2014 Suit"), and assigned to the 58th Judicial District Court in Jefferson County. In the petition, Plaintiffs alleged that they had complied with the MDL court's return-jurisdiction clause in the prior dismissal order. The Plaintiffs alleged that they filed a suit in Mexico, and according to the Plaintiffs "[t]he Mexico courts denied jurisdiction over the Defendants in this matter." Plaintiffs alleged that Cardenas's Ford Explorer and the Bridgestone tire on the vehicle were defective, and asserted product-liability causes of action.

3

On August 1, 2014, Ford filed its "Special Appearance, and Subject Thereto, Motion to Transfer Venue, and Subject Thereto, Motion to Dismiss, and Subject to Each of the Foregoing, Special Exceptions, Original Answer to Plaintiffs' Original Petition, and Reliance on Jury Demand" (hereinafter "Special Appearance"). In its Special Appearance, Ford argued that Plaintiffs alleged as jurisdictional facts only that Ford does business in the State of Texas, and Ford stated that plaintiff's allegation "is factually and legally insufficient to demonstrate personal jurisdiction over Ford in Texas under either specific or general jurisdiction analysis." Ford pleaded certain jurisdictional facts that it argued precluded Texas from imposing jurisdiction over them, and Ford requested that the trial court decline to exercise jurisdiction over Ford in the matter.

On August 15, 2014, Bridgestone filed its "Special Appearance, Motion to Transfer Venue, Motion to Dismiss and Subject to Each of the Foregoing, Special Exceptions, Original Answer to Plaintiffs' Original Petition[,]" asserting certain jurisdictional facts and arguing that Plaintiffs had failed to allege facts to support specific or general jurisdiction over Bridgestone.

The 2014 Suit was transferred to the MDL court and assigned individual cause number 14-10-11193-CR. Ford and Bridgestone filed amended special appearances in the MDL court again challenging personal jurisdiction. In the MDL court, the

4

Plaintiffs filed a motion to reopen their previously dismissed case and to consolidate the old and new lawsuits. In February 2015, the MDL court granted Plaintiffs' motion and reopened Plaintiffs' old case "administratively . . . for purposes of the consolidation[,]" and ordered that the consolidated case proceed forward under "Individual Cause No. 14-10-11193[.]" Subsequently, the MDL litigation proceedings were closed and the MDL court transferred Plaintiffs' case back to the Jefferson County trial court for further proceedings.

On July 5, 2016, Plaintiffs filed a First Amended Petition, asserting, among other things, causes of action for breach of warranty, negligence, gross negligence, and strict product liability against Ford and Bridgestone. The same day, Plaintiffs filed a response to Ford's and Bridgestone's special appearances and objections to and a motion to strike the special appearances. In their objections to and motion to strike the special appearances, Plaintiffs alleged that Bridgestone's First Amended Special Appearance did not include the attachments it referenced and that any affidavit supporting the pleading should have been served at least seven days prior to the hearing set for July 12, 2016. Plaintiffs also argued that Ford's special appearance was defective because the verification provided by Ford to its Special Appearance was from counsel for Ford and was not based on personal knowledge, is conclusory, and did not meet the requirements of Rule 120a of the Texas Rules of

Civil Procedure. And, Plaintiffs argued that Ford and Bridgestone waived their special appearances because their special appearances were not in compliance with Rule 120a and "were not filed prior to any other pleading[.]"

On July 11, 2016, Bridgestone filed its Second Amended Special Appearance, with an attached affidavit from the Director of Bridgestone's Product Analysis Department. On July 12, 2016, the trial court held a hearing on Ford's Second Amended Special Appearance, Bridgestone's Second Amended Special Appearance, and Plaintiffs' Objections to and Motion to Strike Defendants' Special Appearances.

On July 22, 2016, the 58th Judicial District Court in Jefferson County entered an order denying Ford and Bridgestone's special appearances and finding that Ford and Bridgestone are subject to general jurisdiction but not specific jurisdiction. The trial court also expressly overruled Plaintiffs' objection to the lack of notice on Bridgestone's Second Amended Special Appearance, overruled Plaintiffs' objections to Ford's and Bridgestone's special appearances, and denied Plaintiffs' motion to strike Ford's and Bridgestone's special appearances. Ford and Bridgestone filed notices of appeal. In their joint appellate brief, Appellants argue that the trial court erred in holding that Ford and Bridgestone are subject to general jurisdiction

6

in Texas. Plaintiffs did not cross-appeal and no party has challenged the trial court's ruling that the trial court lacks specific jurisdiction over Bridgestone and Ford.

Issues on Appeal

In their joint appellate brief, Appellants present three issues. In issues one and two, Appellants argue that the trial court erred in denying their special appearances as to general jurisdiction because they were not "at home" in Texas. In issue three, Appellants contend that they did not waive their personal-jurisdiction defense in this lawsuit by their conduct in Plaintiffs' first suit.

Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the jurisdiction of a Texas court. *Moncrief*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658-59 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009).

If the plaintiff meets its initial burden, "the burden shifts to the defendant to negate all potential bases for personal jurisdiction the plaintiff pled." *Moncrief*, 414

7

S.W.3d at 149; *BMC Software*, 83 S.W.3d at 793. A defendant may negate the plaintiff's jurisdictional allegations on either a factual basis or a legal basis. *Kelly*, 301 S.W.3d at 659.

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.* (footnotes omitted).

## Personal Jurisdiction

A trial court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction is authorized by statute and is consistent with federal and state constitutional due process guarantees. *Moncrief*, 414 S.W.3d at 149; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). The Texas long-arm statute provides that in addition to other acts that may constitute doing business in Texas, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
(2) commits a tort in whole or in part in this state; or

8

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this State.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2015). Although an allegation of jurisdiction may satisfy the Texas long-arm statute, the allegation still may not satisfy the due process requirements under the United States Constitution. *Moncrief*, 414 S.W.3d at 149. Accordingly, a court must examine the facts to determine if the exercise of personal jurisdiction over the defendant comports with due process. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

Asserting personal jurisdiction over a nonresident defendant comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction comports with traditional notions of fair play and substantial justice. *Retamco Operating*, 278 S.W.3d at 338. The minimum contacts analysis requires "'some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The focus is on the defendant's activities and expectations. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). A defendant's contacts may give rise to either general jurisdiction or specific

jurisdiction. *See Moncrief*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010).

General Jurisdiction

General jurisdiction may only be exercised over a nonresident defendant whose contacts in the forum state are so continuous and systematic "'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction requires a more demanding minimum contacts analysis than specific jurisdiction does, and the nonresident defendant must have conducted substantial activities within the forum. *BMC Software*, 83 S.W.3d at 797. In order for Texas courts to exercise general jurisdiction over a nonresident, the nonresident's contacts with Texas must be continuous, systematic, and substantial. *See Goodyear*, 564 U.S. at 916, 919; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) ("If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts."). "General jurisdiction is premised on the notion of consent. That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there." *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 808. "General jurisdiction has been described

10

as 'dispute-blind,' an exercise of the court's jurisdiction made without regard to the nature of the claim presented." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). The plaintiff must establish more than isolated or sporadic visits with the forum before such contacts will constitute the type of continuous, systematic, and substantial contacts necessary for general jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-19 (1984).

Waiver and Due Course of Pleadings

We address the Appellees' waiver argument and due course of pleading argument first.

In Plaintiffs' response to Ford's and Bridgestone's special appearances, and now on appeal, Plaintiffs argue that Ford and Bridgestone waived their right to challenge personal jurisdiction because they "filed their Special Appearances after availing themselves of the laws of Texas when this case was file[d] in 2007 – specifically to this case and parties – by seeking a dismissal of this matter under the doctrine of *forum non conveniens* – a judicial doctrine which requires acknowledging Texas has proper jurisdiction." According to Plaintiffs, because this suit is a continuation of the previously filed suit as a result of the invoking of the "return jurisdiction" clause of the MDL's prior dismissal order, Ford and Bridgestone have waived their special appearances by filing the motion to dismiss

11

on grounds of forum non conveniens and thereby have (1) invoked the judgment of the trial court on a question other than the court's jurisdiction, (2) recognized by their own acts that an action is properly pending, and (3) sought affirmative action from the court.[2] Plaintiffs made the same argument in their motions to strike Appellants' special appearances, and the trial court denied their motion to strike the special appearances. Appellants argue they did not waive their right to challenge personal jurisdiction by their conduct in the first lawsuit.[3]

Rule 120a of the Texas Rules of Civil Procedure provides, in part, as follows:

> A special appearance may be made as to an entire proceeding or as to any severable claim involved therein. Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion; provided however, that a motion to transfer venue and any other plea, pleading, or motion may be contained

---

[2] According to the Appellants, the Plaintiffs did not file a post-judgment motion or an appeal after the MDL court's entry of the forum non conveniens dismissal order. *See* Tex. R. Civ. P. 329b.

[3] The issue of waiver is phrased as an appellate issue by Appellants in their opening brief, but we interpret Appellants' argument in issue three as merely anticipating what Appellees would argue on appeal. Appellants actually prevailed on the waiver issue in the trial court and none of the parties seek a reversal of the trial court's finding and ruling denying the Plaintiffs' arguments on waiver and due course of pleadings. As stated previously, the trial court overruled Plaintiffs' objections to Ford's and Bridgestone's special appearances and denied Plaintiffs' motion to strike Ford's and Bridgestone's special appearances, thereby rejecting Plaintiffs' waiver argument. Plaintiffs have not cross-appealed. With respect to Appellees' arguments that Appellants' special appearances were defective, the alleged defects were cured when Ford verified its second amended special appearance on April 1, 2015, and when Bridgestone verified its second amended special appearance on July 11, 2016.

in the same instrument or filed subsequent thereto without waiver of such special appearance; and may be amended to cure defects. The issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance. Every appearance, prior to judgment, not in compliance with this rule is a general appearance.

Tex. R. Civ. P. 120a.

Ford and Bridgestone argued to the trial court and now argue on appeal that they complied with the due course of pleadings in this case and did not waive their personal-jurisdiction defense by their conduct in the first suit. According to Appellants, Plaintiffs' first Texas suit was dismissed without prejudice to them refiling under appropriate circumstances and "any waiver of personal jurisdiction by Ford and Bridgestone was extinguished." Plaintiffs assert that it is well settled that separate cases are treated separately for personal-jurisdiction purposes and that purposefully availing oneself of the laws of the State does not constitute consent to jurisdiction as a defendant in a different suit. Appellants assert they challenged the Texas forum in the first suit and, therefore, "could not have abandoned their personal-jurisdiction objections to Plaintiffs' second, separate proceeding."

Assuming without deciding that the ruling regarding waiver was preserved by Appellees on appeal, we agree with Ford and Bridgestone that Plaintiffs' 2014 Suit is a new proceeding initiated by the filing of a new petition. As stated above,

13

the MDL court's Order on Forum Non Conveniens that dismissed the earlier-filed suit expressly stated in the "Return Jurisdiction" provision that

> If Plaintiffs invoke this return jurisdiction clause and re-file in the State of Texas, Plaintiffs may refile their case in Jefferson County, and this Court shall at that time have jurisdiction to determine whether the conditions for invoking the return jurisdiction clause have been met.

We note that the 2014 Suit was filed with a new Original Petition, received a new cause number, the MDL court's Order on Forum Non Conveniens does not limit Ford and Bridgestone's right to assert defenses in any refiled action, and the MDL court's consolidation order states that the reopening of the case was for "administrative" purposes and it was "not intended to and does not prejudice Defendants' right[s]." Accordingly, the trial court correctly rejected the waiver argument and properly denied the Plaintiffs' motion to strike.

General Jurisdiction

Next, we address Appellants' first and second issues regarding whether the trial court erred in denying their special appearances as to general jurisdiction. In their First Amended Petition, the live petition at the time of the hearing, Plaintiffs alleged the following as to Ford:

> . . . Ford has engaged in continuous and systematic contacts with Texas such that Texas is in essence a "home state" of Ford, subjecting it to general personal jurisdiction, by and through the following acts:
>     Ford designs products for the Texas market;
>     Ford advertises in Texas;

14

Ford has established channels of regular communication with Texas customers;

Ford markets its products through distributors who will sell the products in Texas;

Ford owns property in Texas;

Ford pays taxes in Texas;

Ford has offices in Texas;

Ford has employees in Texas; and

Ford maintains a registered agent in Texas.

In its verified special appearance, Ford challenged specific jurisdiction and also asserted that it has insufficient contacts with Texas to subject Ford to general jurisdiction. Ford alleged that Cardenas was a Mexican National living in Mexico when the accident occurred, all other plaintiffs are citizens or residents of Mexico, the accident occurred in Mexico, and the Ford vehicle driven by Cardenas at the time of the accident was not sold, designed, or assembled in Texas. Ford attached exhibits in support of these allegations. According to Ford, it is incorporated in Delaware and has its principal place of business in Michigan, and therefore, it is not "at home" in Texas for purposes of general jurisdiction. Ford argued that, under *Daimler*, (1) the idea that a corporation is "at home" in every state in which that corporation engages in a substantial, continuous, and systematic course of business is unacceptable; and (2) it is incredibly difficult to establish general jurisdiction in a forum other than the corporation's place of incorporation or principal place of business. In Plaintiffs'

15

response to Ford's special appearance, Plaintiffs attached exhibits in support of the jurisdictional allegations in their petition.

In their First Amended Petition, Plaintiffs alleged the following as to Bridgestone:

> . . . Bridgestone [] has engaged in continuous and systematic contacts with Texas such that Texas is in essence a "home state" of Bridgestone [], subjecting it to general personal jurisdiction, by and through the following acts:
> [Bridgestone] designs products for the Texas market;
> [Bridgestone] advertises in Texas;
> [Bridgestone] has established channels of regular communication with Texas customers;
> [Bridgestone] markets its products through distributors who will sell the products in Texas;
> [Bridgestone] owns property in Texas;
> [Bridgestone] pays taxes in Texas;
> [Bridgestone] maintains a registered agent in Texas;
> [Bridgestone] has manufacturing facilities in Texas;
> [Bridgestone] manufactures tires in Texas;
> [Bridgestone] manufactures tire component parts in Texas;
> [Bridgestone] manufactures tread in Texas;
> [Bridgestone] has employees in Texas;
> [Bridgestone] has offices in Texas; and
> [Bridgestone] pays salaries to employees in Texas.

In its verified special appearance, Bridgestone challenged specific jurisdiction and also asserted that Plaintiffs failed to provide facts to support general jurisdiction. According to Bridgestone, Bridgestone Americas, Inc. is a company organized under the laws of Nevada with its principal place of business in Tennessee, and Bridgestone Americas Tire Operations, LLC is organized under the laws of

16

Delaware with its principal place of business in Tennessee. Bridgestone argues that neither entity is "at home" in Texas and neither entity can be subject to suit in Texas based on Plaintiffs' claims that are unrelated to Bridgestone's activities in Texas. In Plaintiffs' response to Bridgestone's special appearance, Plaintiffs attached certain exhibits that Plaintiffs argued would support their jurisdictional allegations in their petition.

In their special appearances and on appeal, Ford and Bridgestone cite to two somewhat recent Supreme Court cases in support of their argument that Ford and Bridgestone are not "at home" in Texas. In 2011, the Supreme Court decided *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) (plurality opinion), and in 2014, the Supreme Court decided *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). Therein, the Supreme Court further clarified the scope of general jurisdiction. We will briefly discuss both cases.

In *Goodyear*, North Carolina plaintiffs sued tire manufacturer Goodyear USA and several of its foreign subsidiaries in North Carolina, stemming from an accident that took place in France. 564 U.S. at 920. Goodyear's subsidiaries, based in Turkey, France, and Luxembourg, challenged the jurisdiction of the North Carolina court. *Id.* at 920-21. Justice Ginsberg, writing for the plurality, noted that the paradigm bases for general jurisdiction over a corporation are its state of incorporation and the

17

state of its principal place of business. *Id.* at 924. The opinion also stated that a court could assert general jurisdiction over a corporation where the corporation's affiliations with a state were "so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). The opinion explained that the foreign defendants in *Goodyear* were "in no sense at home in North Carolina[]" and that the North Carolina Court of Appeals erred in finding general jurisdiction. *Id.* at 929.

In *Daimler*, Argentinian plaintiffs sued a German automaker, DaimlerChrysler (Daimler), in federal court in California, asserting claims under the Alien Tort Statute and the Torture Victim Protection Act and alleging that Daimler's Argentinian subsidiary "collaborated with state security forces to kidnap, detain, torture and kill certain [Mercedes-Benz] workers[.]" 134 S. Ct. at 748-52. The plaintiffs sought to hold Daimler liable for the acts of its Argentinian subsidiary and argued that Daimler was subject to general jurisdiction in California based on either Daimler's own contacts in the state, or in the alternative, based on the contacts of MBUSA, its American subsidiary. *Id.* at 752. The Supreme Court determined that general jurisdiction did not exist over Daimler:

> Even if we were to assume that MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction

18

in California, for Daimler's slim contacts with the State hardly render it at home there.

 *Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. "For an individual the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

 *Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums. Plaintiffs would have us look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation "engages in a substantial, continuous, and systematic course of business." That formulation, we hold, is unacceptably grasping.

 As noted, . . . the words "continuous and systematic" were used in *International Shoe* to describe instances in which the exercise of *specific* jurisdiction would be appropriate. Turning to all-purpose jurisdiction, in contrast, *International Shoe* speaks of "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities*." Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."

 Here neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would

19

presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Id.* at 760-62 (internal citations omitted).

In *Daimler*, the Supreme Court also suggested that *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), exemplified an "exceptional case[]" where a corporate defendant's operations in a forum other than where it was incorporated or had its principal place of business "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 755-56, 761 n.19.

In *Perkins*, war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio. *Perkins*, 342 U.S. at 447-48. Because Ohio then became "the center of the corporation's wartime activities[,]" suit was proper in Ohio. *Daimler*, 134 S. Ct. at 755-56, 756 n.8 (citing *Perkins*, 342 U.S. at 448); *see also Goodyear*, 564 U.S. at 927-28 ("[The Court's] 1952 decision in *Perkins* remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.") (internal quotation marks and brackets omitted); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n.11 (1984) (noting that in *Perkins*, "Ohio was the corporation's principal,

20

if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the State.").

Appellees do not dispute that Ford and Bridgestone are not incorporated in Texas and do not have their principal place of business in Texas, as pleaded by Ford and Bridgestone. Appellees concede that *Goodyear* and *Daimler* "clarified that the general jurisdiction analysis entails a high bar[]" under such circumstances. Neither Ford nor Bridgestone disputes that they have continuous and systematic contacts with Texas. The question this Court must determine in this general-jurisdiction analysis is whether Ford's or Bridgestone's affiliations with Texas are so "'continuous and systematic' as to render [them] essentially at home" in Texas. *See Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 919).

At the hearing on the special appearances, the trial court explained its ruling denying the special appearances on a finding of general jurisdiction:

> I'm going to overrule your . . . special appearance. I think that Ford has done more than have substantial contacts here in Texas. They own property in Texas. They own bank accounts in Texas. They've made Texas their home, and that will be my ruling, also for the tire company.

Appellees contend that this reasoning by the trial court was at least partially based on an analysis similar to that used in *Searcy v. Parex Resources, Inc.*, wherein the Texas Supreme Court explained its finding that Texas courts did not have general jurisdiction over Parex Canada:

21

Here, we take heed of the trial court's finding that Parex Canada has no bank accounts, offices, property, employees, or agents in Texas. It does not sell products in Texas, nor does it pay taxes here. Aside from a few meetings concerning transactions unrelated to this case, Parex Canada has not interacted with Texas aside from its dealings with [a Bermudian company with operations in Houston]. Its contacts with Texas are not even continuous and systematic, let alone sufficient to deem it essentially at home in Texas. There is no general jurisdiction over Parex Canada, and we affirm the court of appeals on this issue.

496 S.W.3d 58, 73 (Tex. 2016).

We find instructive the Supreme Court's recent decision in *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017), which was handed down after the trial court's order denying the special appearances in this case. In *BNSF*, railroad employees sued their employer, BNSF, in Montana state court for damages suffered from an on-the-job injury under the Federal Employers' Liability Act. *Id*. at 1553. The employees did not reside in Montana and the injuries did not occur there. *Id.* BNSF did not maintain its principal place of business there, nor was it incorporated there. *Id.* BNSF maintained tracks in Montana, did business there, and employed Montana workers. *Id.* at 1554. In concluding that Montana could not exercise general jurisdiction over BNSF, the Supreme Court explained:

BNSF, we repeat, is not incorporated in Montana and does not maintain its principal place of business there. Nor is BNSF so heavily engaged in activity in Montana "as to render [it] essentially at home" in that State. As earlier noted, BNSF has over 2,000 miles of railroad track and more than 2,000 employees in Montana. But, as we observed in *Daimler*, "the general jurisdiction inquiry does not focus solely on the

22

magnitude of the defendant's in-state contacts." Rather, the inquiry "calls for an appraisal of a corporation's activities in their entirety"; "[a] corporation that operates in many places can scarcely be deemed at home in all of them." In short, the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana. But in-state business, we clarified in *Daimler* and *Goodyear*, does not suffice to permit the assertion of general jurisdiction over claims like [Plaintiffs'] that are unrelated to any activity occurring in Montana.

*Id.* at 1559 (footnotes and internal citations omitted).

Although the jurisdictional allegations made by Plaintiffs regarding Ford's and Bridgestone's contacts in Texas may be more substantial than the contacts of Parex Canada in the *Searcy* case, as in *BNSF*, the respective business activities of Ford and Bridgestone in Texas are insufficient to permit the assertion of all-purpose general jurisdiction over claims like Plaintiffs. Likewise, we do not believe these facts give rise to "exceptional" circumstances like in *Perkins* where the foreign defendant relocated its operations to the forum state during wartime and, as a result, the state became the defendant's principal, if temporary, place of business.[4] To hold that Plaintiffs' jurisdictional allegations as to Ford or Bridgestone are sufficient to

---

[4] We note that although Appellees assert on appeal that *Perkins* is not the only circumstance in which general jurisdiction exists when a corporation is neither incorporated in nor has its principal place of business there, Appellees have not cited any other Supreme Court cases where "exceptional" circumstances created general jurisdiction over a nonresident defendant.

23

support general jurisdiction here would be an "exorbitant exercise[] of all-purpose jurisdiction[.]" *See Daimler*, 134 S. Ct. at 762-63.

We conclude that the Appellees have not alleged jurisdictional facts to support the trial court's finding that Ford's and Bridgestone's affiliations with Texas are so "'continuous and systematic' as to render [them] essentially at home" in Texas. *See id.* at 761 (quoting *Goodyear*, 564 U.S. at 919). Accordingly, Appellees have failed to meet their initial burden to bring Ford or Bridgestone within the jurisdiction of the trial court.

Issues one and two are sustained. We reverse the portion of the trial court's order finding it had general jurisdiction over Ford and Bridgestone, we reverse the trial court's order denying Appellants' special appearances, and we render judgment dismissing Appellees' claims against Appellants for lack of personal jurisdiction.

REVERSED AND RENDERED.

_____
LEANNE JOHNSON
Justice

Submitted on March 2, 2017
Opinion Delivered February 22, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.

24