ZINC NACIONAL, S.A., Petitioner,

v.

BOUCHÉ TRUCKING,
INC., Respondent.

No. 09–0734.

Supreme Court of Texas.

April 9, 2010.

Byron C. Keeling, Keeling & Downes, P.C., Houston, Alison White Haynes, Trevino Valls & Haynes, LLP, Laredo, Ken Slavin, Milton Carey Colia, Kemp Smith, LLP, El Paso, for Petitioner.

Eric Bliss Darnell, Law Office of Eric B. Darnell, El Paso, for Respondent.

Roberto A. Duran, El Paso, for other interested parties.

PER CURIAM.

In this negligence case, we must decide whether a non-resident defendant had minimum contacts with Texas for purposes of establishing specific jurisdiction by using a third-party trucking service to transport its goods through Texas to an out-of-state customer. We conclude that it did not. Accordingly, we reverse the court of appeals' judgment, 296 S.W.3d 763, and remand to that court for consideration of respondent's alternative jurisdictional argument.

Zinc Nacional, S.A., is a Mexican company that primarily manufactures zinc sulfate and zinc oxide. It has 260 customers worldwide, thirty in the United States and three or four in Texas. It also receives raw materials from suppliers in Texas. A few years ago, Zinc began manufacturing grayback paper for use in drywall manufacturing. It has only three customers for its grayback paper, two in Mexico and one—American Gypsum—in New Mexico. Zinc is not a Texas resident and maintains no offices in Texas. It has no employees, agents, or representatives in Texas, nor does it advertise or market its paper product here. Zinc contracts with a Mexican company, C.H. Robinson de Mexico, for transportation of its products throughout Mexico and the United States.

Zinc focuses on selling its paper product to drywall-manufacturing plants located in New Mexico, Nevada, and Florida. American Gypsum in New Mexico has been a customer of Zinc's paper product for the past seven years. Zinc ships two to three loads to American Gypsum a week. In December 1999, Zinc loaded eight rolls of grayback paper onto a C.H. Robinson trailer in Monterrey, Mexico, pursuant to a purchase order from American Gypsum. C.H. Robinson trucked the load from Monterrey, Mexico, to Laredo, Texas. The purchase order specified that the shipping terms were "F.O.B. Mid–Bridge Laredo." The shipment was then picked up in Laredo by Bouché Trucking, Inc., a Texas corporation that had been subcontracted by

C.H. Robinson to transport the product to New Mexico.[1]

During transport the rolls shifted, causing the trailer rig to overturn in Texas and injure the driver, Jorge Arrellano. Arrellano sued Bouché, which then filed a third-party petition against Zinc seeking indemnity and contribution because Zinc employees loaded the paper rolls onto the trailer. Zinc filed a special appearance challenging personal jurisdiction, arguing that Texas courts could exercise neither specific nor general jurisdiction over it. *See* TEX. R.CIV.P. 120a. The trial court denied Zinc's special appearance. The court of appeals affirmed, concluding that Zinc's decision to use a shipper it knew would transport its goods through Texas on Texas roads to a customer in New Mexico constituted purposeful availment of Texas benefits, thus establishing minimum contacts for purposes of specific jurisdiction. 296 S.W.3d at 769. Because it concluded specific jurisdiction was proper, the court of appeals did not consider Bouché's alternative argument that general jurisdiction was proper as well. *Id.* at 768.

Whether a court has personal jurisdiction over a nonresident defendant is a question of law, which we review de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). The Texas long-arm statute's broad "doing business" language authorizes personal jurisdiction over a nonresident defendant "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991); TEX. CIV. PRAC. & REM. CODE § 17.042(1). To establish personal jurisdiction, the defendant must have established minimum contacts with the forum state, and the assertion of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Marchand*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The minimum-contacts analysis requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

"Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction." *Marchand*, 83 S.W.3d at 795. When specific jurisdiction is asserted, the minimum contacts analysis focuses "on the 'relationship among the defendant, the forum, and the litigation.'" *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 578–76 (Tex.2007) (quoting *Guardian Royal* 815 S.W.2d at 228).

Both this Court and the United States Supreme Court have held that the mere fact that goods have traveled into a state, without more, does not establish the minimum contacts necessary to subject a manufacturer to personal jurisdiction within that state. *See, e.g., World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Michiana*, 168 S.W.3d at 788. The fact that a seller knows his goods will end up in the forum state does not support jurisdiction when the seller made no attempt to market its goods there. *Michiana*, 168 S.W.3d at 787. The exercise of

1. There is some dispute as to whether title was actually transferred in Texas or Mexico. However, the question of where the transfer took place is irrelevant to our analysis.

jurisdiction over a merchant requires that the merchant actually direct sales *to* the forum state, not *through* it. *See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026 ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State....."). Accordingly, a merchant's decision to ship its goods with a third-party shipper that will travel through Texas to a recipient outside of Texas does not, by itself, constitute purposeful availment.

■ Here, there is no evidence that Zinc has attempted to serve the market in Texas. It has no offices, employees, agents, or representatives in Texas, nor does it advertise or market its paper products here. As such, Zinc lacks the minimum contacts with Texas necessary to establish specific jurisdiction. Although Zinc does have three or four customers for its other products in Texas, and does receive some raw materials from Texas, these facts are unrelated to the accident in this case and are thus irrelevant to the question of specific jurisdiction. However, they may have some bearing on the existence of general jurisdiction, an issue the court of appeals did not consider.

For the foregoing reasons, we grant the petition for review and, without hearing oral argument, TEX.R.APP. P. 59.1, reverse the court of appeals' judgment and remand to that court for it to consider respondent's general jurisdiction argument.