**Opinion issued May 11, 2017**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-16-00997-CV

―――――――――――――

## IN THE INTEREST OF S.M.S. AND S.T.S., CHILDREN

―――――――――――――

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Case No. 2006-00355J

―――――――――――――

## MEMORANDUM OPINION

Following a bench trial, the trial court terminated the parental rights of T.R.S., the alleged father, and M.M.C., the mother, to their two children, S.M.S. and S.T.S. In separate appeals, the parents challenge the trial court's judgment. We affirm.

## BACKGROUND

The children first came into the care of the Texas Department of Family and Protective Services in October 2005, following a referral for neglectful supervision. The father did not appear at this stage of the proceeding. The Department and the mother entered into a settlement agreement that contemplated a stair-step return of the children to the mother's custody and return of the children's managing conservatorship to the mother.

Following that settlement, the trial court signed a January 2007 judgment that found the appointment of the mother as managing conservator would not be in the children's best interest, removed the children's mother as their managing conservator, and named the Department managing conservator. Pursuant to the settlement agreement, the judgment further provided that the mother, as possessory conservator, would have visitation, access, and possession of the children, who would be returned to the mother by March 2007 upon her completion of (1) psychiatric and drug evaluations; (2) proof that she had maintained a stable living environment and employment; and (3) a home assessment. The judgment also required the mother to continue to reside in Harris County until after the modification was completed, and prohibited the children's removal from Harris County without the Department's prior written approval.

The record contains certificates of a paternity registry search reporting no notice of intent to claim paternity with respect to each child. The father claimed he was married to the mother before the children were born, but searches did not reveal any marriage certificate. By time of trial, the father had not submitted to DNA testing to prove his paternity.

Before the Department transferred managing conservatorship of the children to the mother under the agreement, the mother and the children fled Texas with the father. The mother did not seek or receive written approval from the Department. In arranging for the departure, the father furtively provided the younger child with a cell phone and arranged to meet him at a school bus stop near the foster home where he lived with several other children. When the parents picked up the child, they threatened the other children waiting at the bus stop, telling them that they knew where the children lived and that if the children didn't want to be harmed, they needed to keep their mouths shut.

For the next several years, the family lived "on the run" in a recreational vehicle, traveling between Colorado, Utah, and New Mexico. They spent at least one school year in Colorado but, when the school discovered that the elder child had an undisclosed heath issue, the school counselor notified that state's Child Protective Services and the mother. After learning that Colorado CPS had been notified, the parents packed the RV and left the area with the children in tow. Eventually, the

family came to the attention of authorities in New Mexico, where the Department took the children back into custody. The Department then moved to modify or, alternatively, terminate the parental rights to the children.

Neither the mother nor the father appeared at trial. Through telephone conversations with their attorneys, they claimed to be unaware of the trial date. Based on these claims, counsel sought a continuance, which the trial court denied.

At trial, the father's counsel conceded that the father had not submitted to DNA testing. The father is identified on S.M.S.'s birth certificate as her father, but not on S.T.S.'s birth certificate. The Texas Department of State Health Services confirmed that no father claimed paternity and no evidence in the record demonstrates that the father ever married the mother or undertook any effort to establish legal paternity.

**FATHER'S APPEAL**

The trial court terminated the father's parental rights pursuant to section 161.002, which allows for termination if (1) after being served with citation, the alleged father "does not respond by timely filing an admission of paternity or a counterclaim for paternity" or (2) when the child is over one year of age at the time the petition for termination of the parent-child relationship is filed, he has not registered with the state paternity registry and, after the exercise of due diligence by the Department, "his identity is known but he cannot be located." TEX. FAM. CODE

4

ANN. § 161.002(b)(1), (b)(2)(B) (West Supp. 2016). The father concedes that the evidence is legally and factually sufficient to support termination of his parental rights under subsection (b)(1), but contends that it is not sufficient to support termination under subsection (b)(2)(B). Subsections 161.002(b)(1) and 161.002(b)(2), however, provide alternate grounds for termination; in other words, a finding under either subsection (b)(1) or subsection (b)(2) provides a sufficient predicate for termination as long as the evidence also supports the trial court's finding that termination is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.002(b) (listing four possible predicate grounds for termination of an alleged biological father's parental rights, identified as alternate grounds by use of "or" between subsections (3) and (4)). In light of the father's concession, therefore, we need not consider whether the evidence is legally and factually sufficient to support the trial court finding under section 161.002(b)(2)(B). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

The father also contends that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the children's best interest. In conducting a legal-sufficiency review in a parental-rights-termination case brought by the Department, we look at the entire record to determine whether the evidence, viewed in the light most favorable to the finding, is such that a reasonable factfinder could have formed a firm belief or conviction about

the truth of the matter on which the Department had the burden of proof. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) per curiam) (quoting *In re J.F.C.*, 96 S.W.3d at 266). We also remain mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.* If we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, we must hold the evidence to be legally insufficient and render judgment in favor of the parent. *In re J.F.C.*, 96 S.W.3d at 266.

In conducting a factual-sufficiency review in a parental-rights termination case, we determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which the Department bore the burden of proof. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a

6

factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (quoting *In re J.F.C.*, 06 S.W.3d at 266).

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re J.F.C.*, 96 S.W.3d 256, 294 (Tex. 2002); *see* TEX. FAM. CODE ANN. § 153.131(b) (West 2014). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016).

The factfinder should consider a number of factors to determine the best interest of the child, including

- the desires of the child,

- the present and future physical and emotional needs of the child,

- the present and future physical and emotional danger to the child,

- the parental abilities of the people seeking custody,

- programs available to assist those people in promoting the best interest of the child,

- plans for the child by those people or by the agency seeking custody,

- stability of the home or proposed placement,

- the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and

- any excuse for the acts or omissions of the parent.

7

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In some cases, undisputed evidence of only one of these factors may be enough to support a finding that termination is in the best interest of the child; in other cases, there could be "more complex facts in which paltry evidence relevant to each consideration mentioned in *Holley* would not suffice" to support termination. *See In re C.H.*, 89 S.W.3d at 27.

The children are teenagers and old enough to express their desires. The younger child is doing well in a safe adoptive placement. The elder child has been diagnosed with dissociative disorder and mild intellectual disability. She is currently in a foster home and also wishes to be adopted. The Department confirmed that it will look for a prospective adoptive family for her.

The record demonstrates that the parents did not meet the children's physical and emotional needs. For ten years of their childhood, the children lived on the run with their parents. The family would move every time the children started to become comfortable at the school they were attending.

The children told their caseworker that the parents do not take care of their needs properly. The father made the children beg for money from strangers at truck stops so the family could buy food. This evidence shows that the father lacks the parenting skills necessary to keep the children emotionally and physically safe and weighs in favor of termination.

The evidence also shows that father placed the children in an environment of physical and emotional danger. The children witnessed the father becoming physically violent toward their mother and, on at least one occasion, hitting her and dragging her by her hair. During another argument between their parents, the children witnessed their father dousing himself with lighter fluid. The elder child expressed fear for her and her brother's safety if they were to be returned to their parents.

When the father picked up the younger child from the bus stop before absconding with him, he threatened the other children waiting there, in a manner so severe that the foster home where those children resided had to be closed. The father tried to intimidate the caseworker by claiming that he knew members of a Mexican cartel who knew who she was and that they would be looking for her. The caseworker interpreted this claim as a threat of personal physical harm. The father's behavior in these incidents show a propensity toward coercive and potentially violent behavior. This evidence weighs in favor of termination.

The father made no effort to improve his parenting skills by participating in the services required by the family service plan. He did not complete any of the services required under the plan. He did not submit to DNA testing to establish paternity. Though he discussed the services plan with the caseworker, he did not

9

submit to drug testing or the psychological examination that the Department had scheduled for him.

Based on this evidence, we hold the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights is in the children's best interest. We further hold that any disputed evidence that a reasonable factfinder could not have credited in favor of the finding is not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination of the father's parental rights is in the children's best interest.[1]

## MOTHER'S APPEAL

In a single issue, M.M.C. contends that the trial court lacked personal jurisdiction over her, making the trial court's ruling terminating her parental rights void. "Whether a court has personal jurisdiction over a nonresident defendant is a question of law, which we review de novo." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). Unlike subject-matter jurisdiction, the lack of personal jurisdiction may be waived. *See Burger King Corp. v. Rudzewicz*,

---

[1] The father also claims that the Department failed to prove in its motion to modify that there had been a material and substantial change since the prior order was rendered. *See* TEX. FAM. CODE ANN. § 156.101(a)(1) (West 2014). The prior order, however, does not address the father's parental rights; he did not appear in those proceedings and was not a party to the 2007 settlement agreement. Because the father has not shown that he is "a party affected by the order," the material and substantial change requirement does not apply. *See id.*

10

471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 2182 n.14 (1985) ("[T]he personal jurisdiction requirement is a waivable right . . . .").

As grounds for her contention, the mother claims that the Department failed to personally serve her with its second motion to modify, which included a cross-claim for termination of parental rights. The record does not support that claim. The Department's motion includes a certificate of service showing that the motion was served on the mother's attorney of record pursuant to Texas Rule of Civil Procedure 21a. Service on an attorney of record is presumed to constitute service on the client, unless the record contains affirmative proof that the client did not authorize her attorney to act on her behalf. *See, e.g.*, *City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 629–30 (Tex. App.—Fort Worth 2003, pet. denied) (applying presumption in context of settlement). Nothing shows that the mother's attorney lacked authority to accept service on her behalf, and neither the mother nor her attorney disputed the regularity of the motion's service in the trial court.

Moreover, the record shows that the mother waived any challenge to personal jurisdiction by making a general appearance in the proceeding. Generally, by appearing before the court, a party indicates that she submits to the court's jurisdiction. *See* TEX. R. CIV. P. 120; *Mays v. Perkins*, 927 S.W.2d 222, 225 (Tex. App.—Houston [1st Dist.] 1996, no writ). To determine if a defendant appeared, we consider the nature and quality of the defendant's activities before the trial court.

*See Smith v. Amarillo Hosp. Dist.*, 672 S.W.2d 615, 617 (Tex. App.—Amarillo 1984, no writ). The Texas Supreme Court has held that any one of three categories of activities constitutes a general appearance: (1) the defendant invokes the judgment of the court on any question other than the court's jurisdiction; (2) the defendant recognizes by its acts that an action is properly pending; or (3) the defendant seeks affirmative action from the court. *See Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam).

The mother generally appeared by filing a May 2007 motion to modify the judgment to reappoint her as managing conservator. That motion recites, "The Court has continuing, exclusive jurisdiction of this suit." In addition, the mother actually participated in the proceeding through counsel. Before the termination proceeding started, the mother's attorney represented to the trial court that he had been in contact with the mother and requested a continuance so that she could be present during the proceedings. When the trial court refused that request, counsel cross-examined witnesses, interposed objections, made affirmative requests on behalf of the mother, and presented argument in her defense during the proceeding. Counsel's actions indicate his authority to act on the mother's behalf, and the mother did not challenge counsel's appearance in a post-trial motion. The record thus supports the exercise of personal jurisdiction over her and further shows that the mother waived any challenge to personal jurisdiction.

## CONCLUSION

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Higley, Bland, and Brown.