# NO. 12-20-00108-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PRESTON BURTON AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF TREVOR MORRIS, KYLOR MORRIS, DIANA MORRIS, CALVIN MORRIS, AND NAFISA MORRIS, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILDREN, C.M., L.M., C.M., AND B.M., SONJA LYNNE WALLS, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF WILLIAM R. WALLS, III, WILLIAM R. WALLS, IV, COLTON TREVOR WALLS, WILLIAM R. WALLS, JR., AND YVONNE WALLS, APPELLANTS* | § | *APPEAL FROM THE 114TH* |
| | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *HONEYWELL INTERNATIONAL INC., INDIVIDUALLY AND AS SUCCESSOR TO ALLIED SIGNAL, INC. AND THE BENDIX CORPORATION, AND HONEYWELL LIMITED/HONEYWELL LIMITÉE, APPELLEES* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Preston Burton, as independent administrator of the estate of Trevor Morris, Kylor Morris, Diana Morris, Calvin Morris, and Nafisa Morris, individually and as next friend of her minor children, C.M., L.M., C.M., and B.M., and Sonja Lynne Walls, individually and as independent executrix of the estate of William R. Walls, III, William R. Walls, IV, Colton Trevor Walls, William R. Walls, Jr., and Yvonne Walls appeal from the trial court's order

granting the consolidated special appearance filed by Honeywell International Incorporated, individually and as successor to Allied Signal, Incorporated and the Bendix Corporation, and Honeywell Limited/Honeywell Limitée (collectively Honeywell unless otherwise noted). In their sole issue, Appellants contend the trial court has personal jurisdiction over the Honeywell defendants. We affirm.

## BACKGROUND

In 2017, a Piper PA-31T dual-engine airplane crashed, killing the pilot, William R. Walls, and his passenger, Trevor Morris. Morris's estate and family members sued First AV Group, LLC, Flare Air, LLC, East Texas H.S.I., Inc., and Sonja Lynne Walls, as executrix of the estate of William R. Walls, III, for negligence. Two of the defendants, First AV Group, LLC and Flare Air LLC, moved to designate Pratt & Whitney Canada Corporation, R.T. Turbines, Inc., and Honeywell International, Inc. as responsible third parties. The trial court granted the motion, and the plaintiffs filed an amended petition naming those parties and Honeywell Limited/Honeywell Limitée as defendants. Plaintiffs alleged negligence and strict products liability against Honeywell. Specifically, they asserted that Honeywell manufactured and sold the aircraft's fuel control unit (FCU), model DPF2, and provided maintenance instructions for it. Further, they alleged that the unit was designed, manufactured, and sold in a defective and unreasonably dangerous condition, and Honeywell breached its duty of care. Appellants asserted that, as a result of Honeywell's acts, the engine failed, and the engine failure was a substantial factor in causing the crash.

Sonja Lynne Walls, individually and as independent executrix of the estate of William R. Walls, III, William R. Walls, IV, Colton Trevor Walls, William R. Walls, Jr., and Yvonne Walls filed a petition in intervention against East Texas H.S.I., Inc., Pratt & Whitney Canada Corporation, and R.T. Turbines, Inc., alleging negligence and gross negligence against those defendants. Additionally, they named Honeywell International, Inc., individually and as successor to Allied Signal Inc. and the Bendex Corporation, and Honeywell Limited/Honeywell Limitée, as defendants and made allegations of negligence and strict products liability against them.

The Honeywell defendants filed a consolidated special appearance in response to the plaintiffs' and intervenors' petitions seeking dismissal of all claims asserted against them based

on a lack of personal jurisdiction. They argued that plaintiffs and intervenors failed to allege facts showing the kind of presence in Texas necessary to establish general jurisdiction. Additionally, they argued that the causes of action against Honeywell did not arise out of, and were not related to, Honeywell's contacts with Texas, therefore plaintiffs and intervenors failed to establish specific jurisdiction. After a hearing, the trial court granted the special appearance.

Plaintiffs and intervenors filed a joint notice of interlocutory appeal pursuant to Texas Civil Practice and Remedies Code Section 51.014(a)(7). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2020). The plaintiffs and intervenors are aligned as Appellants in this appeal.

## SPECIAL APPEARANCE

In their sole issue, Appellants contend Texas has specific jurisdiction over both the Honeywell defendants. They assert that each defendant purposefully directed activities at Texas residents, purposefully availed itself of Texas, and invoked the benefits and protections of her laws. They further argue that their products liability claim results from alleged injuries that arise out of or relate to each Honeywell defendant's contacts with Texas.

## Applicable Law

To render a binding judgment, a court must have both subject matter jurisdiction over the controversy and personal jurisdiction over the parties. ***Spir Star AG v. Kimich***, 310 S.W.3d 868, 871 (Tex. 2010). Whether a court has personal jurisdiction over a defendant is determined as a matter of law, which appellate courts review de novo. ***Id***. When, as here, a trial court does not issue findings of fact or conclusions of law to support its special-appearance determination, we presume that all factual disputes were resolved in favor of the trial court's ruling. ***Id***. at 871-72.

Texas courts have personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statute provides for it, and (2) the exercise of jurisdiction is consistent with federal and state due process guarantees. ***Id***. at 872. Our long-arm statute reaches as far as the federal constitutional requirements for due process will allow. ***Id***. Consequently, the statute's requirements are satisfied if exercising jurisdiction comports with federal due process limitations. ***Id***.

The Texas long-arm statute permits the exercise of jurisdiction over a nonresident who commits a tort "in whole or in part" in this state. *See* TEX. CIV. PRAC. & REM. CODE ANN.

3

§ 17.042(2) (West 2015). The plaintiff must first plead allegations sufficient to confer jurisdiction under the long-arm statute. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). Once the plaintiff meets this initial burden, the burden shifts to the nonresident defendant to negate all potential bases for personal jurisdiction. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Id*. The defendant can discharge its burden to negate those allegations on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas. *Id*. at 659. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id*.

To establish personal jurisdiction, the defendant must have established minimum contacts with the forum state. *Zinc Nacional, S.A. v. Bouché Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (per curiam). The minimum-contacts analysis requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id*. In determining whether a defendant has purposefully availed itself of a forum, we consider three factors. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Second, the contacts must be purposeful rather than random, fortuitous, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id*. Mere awareness that the stream of commerce may sweep the product into the forum state is insufficient. *Kimich*, 310 S.W.3d at 873. Additional conduct indicating an intent or purpose to serve the market in the forum state must be shown. *Id*.

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Id*. at 872. General jurisdiction exists when a defendant's contacts are continuous and systematic, even if the cause of action did not arise from activities performed in the forum state. *Id*. When specific jurisdiction is alleged, we focus the minimum-contacts analysis on the relationship among the defendant, the forum, and the litigation. *Moki Mac River Expeditions*,

221 S.W.3d at 575-76. Specific jurisdiction is dispute-specific, and it is appropriate when the plaintiff's cause of action arises out of or relates to the nonresident defendant's purposeful contacts with the forum state. *See id*. at 576; ***Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.***, 815 S.W.2d 223, 230 (Tex. 1991). Specific jurisdiction may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of or is related to those contacts with the state. ***Kimich***, 310 S.W.3d at 873.

If we determine that the nonresident defendants had sufficient minimum contacts with Texas and the contacts are substantially connected to the claims asserted by Appellants, we then determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice to subject the defendants to the authority of that forum's courts. *See **Zinc Nacional, S.A.***, 308 S.W.3d at 397; ***Vinmar Overseas Singapore PTE Ltd. v. PIT Int'l Trading PTE Ltd.***, 538 S.W.3d 126, 132 (Tex. App.—Hous. [14th Dist.] 2017, pet. denied).

## Analysis

Because Appellants do not assert general jurisdiction as a basis for exercising personal jurisdiction over either of the Honeywell defendants, we restrict our discussion to whether specific jurisdiction exists. For a Texas forum to properly exercise specific jurisdiction in this case against the Honeywell defendants, (1) there must be minimum contacts with Texas by purposeful availment of the privilege of conducting activities here, and (2) the liability must have arisen from or be related to those contacts. *See **Zinc Nacional, S.A.***, 308 S.W.3d at 397-98; ***Moki Mac River Expeditions***, 221 S.W.3d at 579. We begin by considering Honeywell International's and Honeywell Limited/Limitée's contacts with Texas.

### *The Evidence*

Honeywell supported its special appearance with the declaration of Lee Fisher, a senior engineer for Honeywell Aerospace. Appellants presented Fisher's complete deposition testimony as an attachment to their response to Honeywell's Special Appearance. From Fisher's declaration and deposition, we learn that Honeywell International is a Delaware corporation headquartered in North Carolina since August 1, 2019, and before that, in New Jersey for over thirty years. The declaration refers to both Honeywell Aerospace and Honeywell International, Inc. collectively as "Honeywell" but describes Honeywell Limited/Limitée as a "separate corporation, incorporated in Canada" and an "indirect subsidiary" of Honeywell International. Honeywell Aerospace is described as a division of Honeywell International.

5

Fisher stated the specific FCU at issue, model DPF2, was manufactured in 1980 by Honeywell Limited/Limitée's predecessor, Aviation Electric Limited, a Canadian corporation. At some point before Honeywell Limited/Limitée began manufacturing the FCU, Aviation Electric Limited was renamed Bendix Avelex Incorporated, and the FCUs were manufactured in Indiana. Fisher testified Honeywell Limited/Limitée stopped making the DPF2 product line approximately fifteen years before his January 2020 deposition. Since that time, Honeywell Aerospace has been manufacturing the DPF2 and providing support and service for DPF2 in the marketplace, including those previously manufactured by Honeywell Limited/Limitée. The DPF2 applicability is only for the Pratt PT6 family of engines, and for all intents and purposes, Pratt & Whitney is the only customer for this particular FCU, which accounts for 99 percent of Honeywell Aerospace's fuel control sales. While Fisher did not know whether Honeywell Limited/ Limitée was completely defunct, he stated Honeywell Limited/ Limitée has had no control over the DPF2 product line since Honeywell Aerospace took over the product line. Fisher stated that he reviewed records from 2017 through 2019, and he found no indication of any interaction between Honeywell International or Honeywell Limited/Limitée and a Texas entity or a Texas event with respect to the FCU.

Fisher explained that under licensing agreements with Honeywell, only certain repair centers are authorized to conduct repairs of the FCU. At the time of the deposition, Honeywell's exclusive parts distributor for this FCU was located in Florida. From 2017 forward, Honeywell has had no licensed repair centers in Texas that work on the DPF2. Based on his sales research, Honeywell Aerospace has not sold any DPF2 fuel control units into Texas or provided any services such as overhaul or repair of a DPF2 unit in Texas through a licensee during the 2017 to 2019 timeframe. In 2014, an authorized service center was located in Texas, but it is no longer an authorized distribution center for parts.

Fisher acknowledged that Honeywell Aerospace has Texas customers and that Honeywell International markets aerospace products and services in Texas but explained that it does not sell directly to the after-market and does not sell used parts. Even so, a mechanic in Texas could buy a full fuel control, ready to be installed, from either one of Honeywell's licensed repair centers or the distribution center in Florida. Fisher stated that Honeywell Aerospace conducts business in Texas, has offices, and employs sixty-nine people in Texas. However, none of those employees have any involvement with fuel control units, and they are not associated with Honeywell

6

Limited/Limitée. Forty-four of those employees work at the Honeywell Aerospace's wheel and brake control center in Houston, with the remaining twenty-five being scattered throughout the state.

Before proceeding into any analysis of whether specific jurisdiction exists, we must first determine for jurisdictional purposes whether the conduct of Honeywell International and Honeywell Limited/Limitée are to be analyzed together or separately. Secondary to that is whether Honeywell International and Honeywell Aerospace are one or separate.

### Distinct Corporate Entities

In their petition, Appellants made the same allegations against both Honeywell International and Honeywell Limited/Limitée, collectively referring to them as "Honeywell." Appellants made no distinction between acts of either entity, alleging globally that "[a]s a result of Honeywell's acts, the engine failed." Honeywell Aerospace is not named as a defendant. On appeal, Appellants assert that because Honeywell Aerospace is a division of Honeywell International, Honeywell Aerospace's contacts are imputed to Honeywell International. Further, they argue, Honeywell Aerospace's contacts with Texas can be imputed to Honeywell Limited/Limitée because Honeywell Aerospace currently manufactures, sells, services, and repairs the DPF2, including issuance of periodic safety bulletins. Therefore, considering the DPF2 and aerospace work, the argument continues, Honeywell International and Honeywell Limited/Limitée are fused for jurisdictional purposes. Honeywell contends that the entities are not fused, and the jurisdictional contacts of Honeywell International and those of Honeywell Limited/Limitée should be assessed separately.

Personal jurisdiction may exist where one corporation's actions are ascribed to another by disregarding their distinct corporate entities. *See Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 119 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.). The law presumes that two separate corporations are distinct entities, and it is Appellants' burden to prove the two corporations are not truly distinct corporate entities. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). To fuse two corporations for jurisdictional purposes, Appellants must prove one controls the internal business operations and affairs of the other to the extent that the two entities effectively cease to be separate. *Id*. at 799.

In the evidence before us, Honeywell Limited/Limitée is described as a separate corporation, incorporated in Canada, wholly owned by Honeywell International. Thus, it is a

separate company. *See Marchand*, 83 S.W.3d at 798. Even though Fisher described Honeywell Limited/Limitée as a wholly owned subsidiary of Honeywell International, he provided no evidence as to the corporate structure of either entity much less the interrelationship between the two entities. Fisher could not state whether Honeywell Limited/Limitée was an ongoing concern.

The record before us contains no evidence that Honeywell International controls the internal business operations of Honeywell Limited/Limitée or vice versa. In the absence of findings of fact or conclusions of law to support its special-appearance determination, we presume that all factual disputes were resolved in favor of the trial court's ruling. *Kimich*, 310 S.W.3d at 871-72. Appellants did not meet their burden to establish that Honeywell International and Honeywell Limited/Limitée are not truly distinct corporate entities or that the two corporations disregard their distinct corporate entities. *See Coleman*, 16 S.W.3d at 119. The trial court did not find so and neither do we. Therefore, for purposes of our discussion, we presume the Honeywell defendants are two distinct entities, and we consider the jurisdictional contacts of Honeywell International separately from those of Honeywell Limited/Limitée.

The same cannot be said of Honeywell International and Honeywell Aerospace. Honeywell Aerospace is described as a division of Honeywell International. There is no evidence before us as to whether Honeywell Aerospace has a corporate identity; only that it is underneath Honeywell International. Fisher acknowledged that though he is employed by Honeywell Aerospace, as a division of Honeywell International, he is also an employee of Honeywell International. Honeywell International makes no distinction between it and Honeywell Aerospace in its special appearance, evidence submitted, or in the briefing before us. Honeywell International appears to view it and Honeywell Aerospace as one unit and based on the evidence before us, so do we.

Having determined the contacts of Honeywell International and Honeywell Limited/Limitée are to be analyzed separately and those of Honeywell International and Honeywell Aerospace together, we now look at their respective contacts with Texas as those contacts pertain to specific jurisdiction.

*Honeywell Limited/Limitée's Contacts*

Honeywell Limited/Limitée is a Canadian Corporation whose predecessor, Aviation Electric Limited, produced the FCU product line that included the DPF2 at issue. That product

line was taken over by Honeywell Aerospace at least fifteen years ago. There is no evidence that Honeywell Limited/Limitée or Aviation Electric Limited had any facilities in Texas that designed or manufactured the DPF2 during the time period it was producing the FCU product line. In April 1980, the FCU at issue was sold to Pratt & Whitney, another Canadian corporation, and that company installed the FCU on a PT6A-11 turboprop model engine in one of its facilities in Canada. Pratt & Whitney then sold the engine to Piper Aircraft Company. Piper Aircraft installed the engine on the accident aircraft, a Piper PA-31T, at some time before February 18, 1981. At the time, Piper was building airplanes in Pennsylvania and Florida. Piper Aircraft Company sold the accident aircraft to a company in Oakland, California in February 1981. Records also indicate that the FCU was overhauled and reinstalled in the engine in 1997 at a facility in West Virginia. The engine was then reinstalled on the accident aircraft in Paducah, Kentucky.

Appellants rely on Honeywell Aerospace's contacts with Texas to argue that Texas has jurisdiction over Honeywell Limited/Limitée presumably because Honeywell Aerospace continues to service the Honeywell Limited/Limitée legacy products. We disagree. Appellants presented no evidence outside Fisher's deposition as to Honeywell Limited/Limitée's contacts with Texas. Thus, there is no evidence that Honeywell Limited/Limitée purposefully availed itself of Texas or established minimum contacts with Texas. Therefore, Texas does not have personal jurisdiction over Honeywell Limited/Limitée. *See Zinc Nacional, S.A.*, 308 S.W.3d at 398; *Kelly*, 301 S.W.3d at 660-61.

### Honeywell International's Contacts

According to Appellants, Honeywell engaged in the following acts which constitute contact for jurisdictional purposes: it maintained offices and employees in Texas, engaged in marketing, had a distributor, is registered to do business in Texas, has a registered agent here, pays Texas sales tax, owns personal property in Texas, and advertises in Texas. Therefore, Appellants argue, Honeywell purposefully created relationships and obligations with Texans and Texas businesses. Appellants correctly point out that through its Honeywell Aerospace division, Honeywell International has purposely availed itself of the benefits of Texas. Honeywell does not dispute that Honeywell Aerospace division has offices in Texas, has employees, advertises in Texas, and, until 2014, had a licensed FCU distributor in Texas. Accordingly, we conclude that Honeywell International had sufficient purposeful contact with Texas to satisfy the first prong of

jurisdictional due process. But purposeful availment alone will not support an exercise of specific jurisdiction. *See Moki Mac River Expeditions*, 221 S.W.3d at 579. Specific jurisdiction has two co-equal components. *Id*. For specific jurisdiction purposes, purposeful availment has no jurisdictional relevance unless the defendant's liability arises out of or relates to the forum contacts. *Id*.

<u>Substantial Connection</u>

To satisfy the requirements for specific jurisdiction, Appellants' causes of action must arise out of or relate to Honeywell International's purposeful contacts with the forum state. *See id*. at 576. Appellants assert that *Moki Mac*, which is not a products liability case, does not control this case. Instead, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), they assert "the Supreme Court defined what *arise out of or relate to* means in the products liability context . . . ." They argue that their interpretation of the phrase "arise out of or relate to" applies here, resulting in jurisdiction over Honeywell.

Appellants assert that Honeywell International's contacts support specific jurisdiction. They argue that Honeywell International sells products to customers in the United States, including Texas, and delivers its products, including the DPF2, into the stream of commerce. Further, they argue, Honeywell International expects its products will be purchased in Texas, it directly markets parts and services to Texas, and the plane crash occurred in Texas, killing two Texans. Therefore, the FCU injured Texans in Texas and, Appellants' argument continues, their claims "arise out of or relate to" Honeywell's contacts.

Appellants misconstrue the applicable law. Given that *Burger King* is not a products liability case either, but rather a breach of contract case, Appellants' attempt to distinguish the cases fails. Further, *Moki Mac* is not inconsistent with *Burger King*. The contacts must be sufficiently related to the operative facts underlying the torts for which Appellants seek damages. *See Moki Mac River Expeditions*, 221 S.W.3d at 588. The pertinent question is whether there is a substantial connection between the alleged forum contacts by Honeywell International through its Honeywell Aerospace division and the "operative facts" of the litigation. *See id*. at 585. The operative facts of the litigation are those facts that would be the focus of the trial. *See id*; *DENSO Corp. v. Hall*, 396 S.W.3d 681, 690-91 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Appellants argue that Texas is the only state where this case can be tried whole and all of the operative facts of this litigation involve Texas: the plane crash occurred in Texas, the individuals who died and their families are Texas residents, the plane wreckage is in Texas, the pilot was trained in Texas, and other defendants are Texas companies. This argument misses the mark. Specific jurisdiction arises out of a defendant's liability-creating activity within the forum state. *See 2007 East Meadows, L.P. v. RCM Phoenix Partners, L.L.C.*, 310 S.W.3d 199, 206 (Tex. App.—Dallas 2010, pet. denied). In this products liability action against Honeywell International, the location of the accident, victims, plane wreckage, other defendants, or the pilot's training are not relevant to the applicable test. *See Moki Mac River Expeditions*, 221 S.W.3d at 575.

Appellants' petition alleged that Honeywell International negligently designed and manufactured the FCU and negligently failed to provide adequate safety warnings. A "defective product" is a product that is unreasonably dangerous to the user or consumer. *See Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 561-62 (Tex. App.—Houston [1st Dist.] 1995, no writ). A plaintiff may prove a product defective by showing it is (1) unreasonably dangerous as manufactured, (2) unreasonably dangerous as designed, or (3) unreasonably dangerous because adequate warnings or instructions were not provided. *See Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387 (Tex. 1991). A manufacturing defect deviates from its specifications or planned output in a manner that renders the product unreasonably dangerous. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41 (Tex. 2007). The plaintiff must show that the product deviated from its intended designs, the product was defective at the time it left the manufacturer, and the defect was a producing cause of the plaintiff's injuries. *Id*. at 41-42. In a products liability action in which the plaintiff alleges a design defect, he must identify the design defect and prove, among other elements, that there was a safer alternative design. TEX. CIV. PRAC. & REM. CODE ANN. § 82.005 (West 2017); *Ford Motor Co.*, 242 S.W.3d at 42. A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997). Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product but markets it without adequately warning of the danger or providing instructions for safe use. *Id*. Proof of the elements of the causes of action, the operative facts, would be the focus of the trial.

Honeywell International's contacts with Texas through its aerospace division are entirely unconnected to Appellants' allegations that the DPF2 was negligently designed and manufactured or that the safety warnings were defective. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (held that specific jurisdiction does not exist in Texas because plaintiff's claims arise out of tortious acts committed in Syria). None of Honeywell Aerospace's presence and activities in Texas concern the DPF2 product line. Honeywell Aerospace's DPF2 design and manufacturing facilities are located outside Texas. Simply because a user in Texas could purchase a new DPF2 unit or have an existing one serviced through an out-of-state licensed repair center, does not address the core question in this case of whether the DPF2 was defective or unreasonably dangerous as manufactured or designed, or whether adequate warnings or instructions were provided. The subsequent repair of the DPF2 at issue and reinstalment into the aircraft at issue in 1997 occurred in West Virginia and Kentucky. These are the operative facts of this litigation which will be the focus of the trial. Contacts with Texas that are unrelated to the claims asserted are irrelevant to the question of specific jurisdiction. *See Zinc Nacional, S.A.*, 308 S.W.3d at 398; *DENSO Corp.*, 396 S.W.3d at 692.

The evidence shows that the DPF2 was designed and manufactured in Canada decades before the accident. It was last serviced outside of Texas twenty years before the incident made the basis of this suit. Tortious conduct in Canada, West Virginia, or Kentucky cannot support specific jurisdiction in Texas. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 157 (held that where tortious interference claim was principally concerned with actions in California, exercise of specific jurisdiction by Texas courts did not comport with Texas's long-arm statute or due process).

We conclude that a substantial connection did not exist between Honeywell International's contacts with Texas and the operative facts of Appellants' causes of action. Therefore, the trial court does not have specific jurisdiction over Honeywell. We need not decide whether the exercise of jurisdiction over Honeywell comports with traditional notions of fair play and substantial justice. *See* TEX. R. APP. P. 47.1. Accordingly, the trial court did not err in granting Honeywell's special appearance. We overrule Appellants' sole issue.

<u>**DISPOSITION**</u>

Because Appellants have not shown the trial court erred, we ***affirm*** the trial court's order granting Honeywell's special appearance.

<u>**GREG NEELEY**</u>
Justice

Opinion delivered October 30, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 30, 2020

NO. 12-20-00108-CV

PRESTON BURTON AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF
TREVOR MORRIS, KYLOR MORRIS, DIANA MORRIS, CALVIN MORRIS, AND
NAFISA MORRIS, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR
CHILDREN, C. M., L. M., C. M., AND B. M., SONJA LYNNE WALLS, INDIVIDUALLY
AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF WILLIAM R. WALLS,
III, WILLIAM R. WALLS, IV, COLTON TREVOR WALLS, WILLIAM R. WALLS, JR.,
AND  YVONNE WALLS,
Appellants
V.
HONEYWELL INTERNATIONAL INC., INDIVIDUALLY AND AS SUCCESSOR TO
ALLIED SIGNAL, INC. AND THE BENDIX CORPORATION, AND HONEYWELL
LIMITED/HONEYWELL LIMITÉE,
Appellees

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 19-0412-B)

THIS CAUSE came to be heard on the oral arguments, appellate record, and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **PRESTON BURTON AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF TREVOR MORRIS, KYLOR MORRIS, DIANA MORRIS, CALVIN MORRIS, AND NAFISA MORRIS, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILDREN, C.M., L.M., C.M., AND B.M., SONJA LYNN WALLS, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF WILLIAM R. WALLS, III, WILLIAM R. WALLS, IV, COLTON TREVOR WALLS, WILLIAM R. WALLS, JR., AND YVONNE WALLS**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*