**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00113-CV**
_____


**STORAGE BUILDING COMPANY, LLC, Appellant**

**V.**

**NEW CENTURY FINANCIAL, INC., WESTLEY ST. PIERRE, and STEEL FABRICATION SYSTEMS, LLC, Appellees**

---

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-10-13764-CV**

---

**MEMORANDUM OPINION**

Appellant Storage Building Company, LLC ("Storage Building" or "Appellant") filed an interlocutory appeal from the trial court's denial of Appellant's special appearance. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7). For the reasons explained below, we reverse the trial court's order denying Storage Building's special appearance and render the judgment the trial court should have

1

rendered, dismissing Appellee New Century Financial, Inc.'s ("New Century" or "Appellee") claims against Storage Building for lack of personal jurisdiction. *See* Tex. R. App. P. 43.2(c).

## BACKGROUND

Storage Building is a Florida limited liability company that constructs public storage facilities. To build these structures, Storage Building purchased steel from Steel Fabrication Systems, LLC ("Steel"), a Louisiana company. Steel obtained operating funds pending the receipt of Storage Building's payments for the steel it purchased by entering a factoring agreement with New Century. Under this agreement, New Century would buy Steel's accounts receivable at a discount and would recoup its money when Storage Building paid Steel's invoices. Steel and New Century were the only parties to the factoring contract, which Westley St. Pierre ("St. Pierre"), a member of Steel, personally guaranteed. The factoring contract sets out Steel's and New Century's rights and obligations under the contract, specifically including the provision that the factoring contract would be "governed by and constructed in accordance with the laws of the State of Texas. Unless otherwise elected by THE COMPANY [New Century], venue and jurisdiction will be exclusively in the state district courts in Montgomery County, Texas, and the federal district courts of Harris County, Texas."

After entering the factoring contract with Steel, New Century sent Steel's Notice of Assignment ("NOA") to Storage Building. This notice consisted of a form letter stating

> In order to accommodate the changes and growth in our business, we have been fortunate to obtain the services of New Century Financial, Inc. ("New Century") as a source of capital funding. The availability of this service will enable us to serve our customers in a more efficient manner. Therefore, we wish to inform you that payments on all invoices or Accounts and all future amounts due, should be made payable and mailed directly to:
>
> STEEL FABRICATION SYSTEMS, LLC
>
> and
>
> New Century Financial     Veritex Community Bank
> P.O. Box 8968     Account # [number]
> Spring, Texas 77387-8968     ABA routing # [number]
>
> The assignment of our accounts has been duly recorded under the Uniform Commercial Code. A copy will be given to you upon your request. Please make the proper notations on your Accounting ledger and for our records, please acknowledge this letter and that invoices are not subject to any offsets by signing one copy and returning it to New Century. Payment to any other party will not constitute payment. If there are any questions concerning your billing, please call New Century at (713) 840-1600.
>
> This notice and instruction remains in full force and effect until you are notified by New Century in writing to the contrary.

St. Pierre and Nel Somarriba ("Somarriba") signed the notice on behalf of Steel and New Century, respectively. Although the notice includes an acknowledgment for Steel's client companies, such as Storage Building, to sign and

3

return to New Century, signifying its agreement to the changes, no representative of Storage Building signed the exemplars of the form in our record.

When Steel allegedly failed to deliver materials for one of Storage Building's projects and allegedly delivered unusable materials for another project, Storage Building did not pay Steel, even though, according to New Century, Storage Building had approved the invoices, thus "induc[ing]" New Century to purchase these accounts and forward money to Steel.

New Century sued Steel and St. Pierre in the district court of Montgomery County, Texas, alleging causes of action for breach of contract and breach of guaranty, respectively. New Century later amended its petition, adding Storage Building as a defendant.[1] New Century alleged that Storage Building (1) breached the Notice of Assignment by sending payments to Steel, rather than to New Century; (2) "knowingly made material and false statements . . . with the intent that [New Century] would rely upon them and be induced to act upon such reliance[;]" and (3) negligently misrepresented the status of its transactions with Steel, upon which New Century justifiably relied and suffered damages. New Century claimed entitlement to $271,464.15 in damages from Storage Building, plus interest, court costs, and attorneys' fees. Storage Building made a special appearance, contending that as a

---

[1] New Century sued three of Steel's clients in addition to Storage Building, but those defendants are not parties to this appeal.

4

Florida LLC with no principals and no recent business in Texas, it lacked the minimum contacts with Texas to be sued in this state. To support this contention, Storage Building relied on the affidavit of Thomas Massarella, who stated as follows:

> I am a Partner and Chief Financial Officer of Storage Building Company, LLC ("SBC"), which is a Florida limited liability company with its principal place of business in Lakeland, Florida. None of the partners/members of SBC are Texas residents.
>
> SBC primarily constructs buildings that are used as public storage buildings and does not continuously and systematically conduct business in the State of Texas. SBC does not have an office or maintain any bank accounts in the State of Texas. During the past 10 years, SBC has not constructed any buildings or conducted any other business in the State of Texas. SBC is not registered to conduct business in the State of Texas, does not own or lease property in the State of Texas, does not pay taxes in the State of Texas, and does not have any employees or agents in the State of Texas.
>
> In the past, SBC had contracted with Defendant Steel Fabrication Systems, LLC ("Steel"), which was based in Louisiana, for the purchase of steel used in the construction of storage buildings. In October 2020, SBC received a Notice of Assignment of Accounts ("NOA") from Steel in which Steel requested SBC to mail future payments to Plaintiff New Century Financial, Inc. ("NCF") in Spring, Texas.
>
> Although there were some email communications between SBC and NCF regarding the Steel invoices, SBC has never contracted with or entered into any agreements with NCF.
>
> In December 2020, SBC entered into two contracts with Steel for the purchase of steel for two separate construction projects. On December 14, 2020, SBC issued Check No. 1382, payable to Steel in the amount [of] $55,800.00, for a construction project in New Jersey. This check was mailed to Steel in Louisiana and negotiated to and deposited by

5

NCF. On December 16, 2020, SBC issued Check No. 1388, payable to Steel in the amount of $96,869.70. This check was mailed to Steel in Louisiana and negotiated to and deposited by NCF.

Steel breached both contracts and never provided any of the steel that it was contractually obligated to deliver on the Florida project. On the New Jersey project, Steel delivered the wrong materials that were not fabricated to spec and not useable. SBC never issued any other checks to Steel that would have been subject to the NOA.

New Century opposed Storage Building's special appearance, arguing that Storage Building's approval of invoices that it did not pay constituted fraud or negligent misrepresentation. Therefore, New Century reasoned, Storage Building had "directed" intentional torts against a Texas citizen in the State of Texas, and these torts constituted doing business in Texas, rendering Storage Building subject to suit in Texas. New Century attached the affidavit of its president, Somarriba, to authenticate other attachments, including the factoring agreement between Steel and New Century; the amendment to that agreement; St. Pierre's guaranty of the factoring agreement; the notice of assignment; Steel's invoices and Storage Buildings emails approving those invoices; Storage Building's remittance checks; printouts of Storage Building's website; and a copy of an opinion from the United States District Court from the Southern District of Texas. Somarriba's affidavit also states:

> NCF factored invoices for Steel and owed by SBC. Prior to funding on any invoices, NCF contacted SBC to verify the validity of the invoices, including that the work in the invoice had been completed, the invoice was valid and approved and will be paid in the due course of business.

6

The verification emails typically contained the following language (or similar language) for the verification process:

> Attached we are submitting invoices for work completion by Steel Fabrication Systems, LLC.
> …
>
> Would appreciate to please review invoices listed below and reply to ALL as "Approved" if this job has been completed and invoice information is correct.
> …
>
> While replying back you are confirming that invoices are valid, approved and will be process [sic] for payment when due.

The initial contact with SBC for verifications was on October 21, 2020, for Invoice 20016, dated October 16, 2020, for $48,800.00 (net $43,920.00 after the 10% retainage). Attached to my affidavit as Exhibit A-5 is a true and correct copy of the October 21, 2020, email exchange. NCF emailed Mr. Thomas Massarella, Partner/CFO for SBC, and this email included an introduction and that the NOA would be sent to him for the new payment instructions. As noted with Exhibit A-4, the NOA was delivered to SBC the following day. Mr. Massarella emailed back to NCF in Montgomery County, Texas, approving Invoice 20016. Attached to my affidavit as Exhibit A-6 is a true and correct copy of Invoice 20016. NCF funded Steel for this invoice based on SBC's representations in verifying the invoice. This invoice was paid by SBC on December 14, 2020.

NCF stamps checks/remittances when received. If a payment is delivered directly from an account debtor like SBC, a handwritten "R" is marked on the receipt stamp. For the two checks SBC attached as Exhibit 3 in its Special Appearance, both checks have the "R" writing on the remittance, meaning NCF received the checks directly from SBC. Attached to my affidavit as Exhibit A-7 are true and correct copies of the two checks from NCF's file with the date stamp of receipt and the "R" handwritten on each. NCF also posted the December 14, 2020, check on December 15, 2020, when it was received in Montgomery County, Texas, which was one day after the check was issued by SBC.

On October 28, 2020, NCF sought verification for Invoice 20019, dated October 20, 2020, for $13,200.00 (net $11,880.00 after the 10% retainage). Attached to my affidavit as Exhibit A-8 is a true and correct copy of the October 28, 2020, email exchange. The email had the approval language set forth above, that by approving SBC was representing the work in the invoice had been completed, the invoice was valid and approved and will be paid in the due course of business. Mr. Massarella emailed back to NCF in Montgomery County, Texas, approving Invoice 20019. NCF funded Steel for this invoice based on SBC's representations in verifying the invoice. This invoice was also paid by SBC on December 14, 2020.

On November 5, 2020, NCF sought verification for Invoices 20016-1 and 20020. Attached to my affidavit as Exhibit A-9 is a true and correct copy of the November 2020, email exchange. The email had the approval language set forth above, that by approving SBC was representing the work in the invoices had been completed, the invoices were valid and approved and will be paid in the due course of business. Mr. Massarella emailed back to NCF in Montgomery County, Texas the following day, approving Invoice 20016-1 but not approving Invoice 20020. Mr. Massarella advised NCF that he could not approve Invoice 20020 yet as he needed to get with the Project Managers to have them verify first. Because SBC notified NCF it could not verify this invoice at this time, NCF relied on this representation and did not purchase Invoice 20020 from Steel and did not provide any funds to Steel for Invoice 20020. Attached to my affidavit as Exhibit A-10 is a true and correct copy of Invoice 20020.

As to the remaining unpaid invoices at issue in this suit, on March 5, 2021, NCF sought verification for Invoices 20019-1 and 20022-1, both dated March 4, 2021, for $60,680.00 (net $54,612.00 after the 10% retainage) and $37,800.00 (net $34,020.00 after the 10% retainage), respectively. Attached to my affidavit as Exhibit A-11 is a true and correct copy of the March, 2021, email exchange. Both projects for these invoices were located in New Jersey. The email had the approval language set forth above, that by approving SBC was representing the work in the invoices had been completed, the invoices were valid and approved and will be paid in the due course of business. Mr. Massarella emailed back to NCF in Montgomery County, Texas the following day, approving both invoices. There is nothing in the email response from

8

SBC noting any issues with any goods or services being provided by Steel, or any offsets SBC may be claiming, or any other issues with Steel's work. NCF funded Steel for these invoices based on SBC's representations in verifying the invoices. SBC has never paid for these invoices.

On April 16, 2021, NCF sought verification for Invoices 20016-2, 20019-2 and 2022-2, all dated April 12, 2021, for $143, 550.00 (net $129,195.00 after the 10% retainage), $34,296.83 (net $30,957.15 after the 10% retainage) and $25,200.00 (net 22,680.00 after the 10% retainage), respectively. Attached to my affidavit as Exhibit A-12 is a true and correct copy of the April, 2021, email exchange. Two of the projects for these invoices were located in New Jersey and one project was in New York. The email had the approval language set forth above, that by approving SBC was representing the work in the invoices had been completed, the invoices were valid and approved and will be paid in the due course of business. Mr. Massarella emailed back to NCF in Montgomery County, Texas on April 22, 2021, approving all three invoices. There is nothing in the email response from SBC noting any issues with any goods or services being provided by Steel, or any offsets SBC may be claiming, or any other issues with Steel's work. NCF funded Steel for these invoices based on SBC's representations in verifying the invoices. SBC has never paid for these invoices.

There are five (5) invoices issued to SBC that were sold, assigned and transferred to NCF that remain unpaid, totaling $271,464.15. Attached to my affidavit as Exhibit A-13 are true and correct copies of the unpaid invoices. The five unpaid invoices at issue as to the claims against SBC are dated between March 4, 2021, and April 12, 2021. Based on SBC's representations that these invoices were valid, work had been completed and the invoices would be paid when due, NCF purchased the invoices from Steel and funded payment to Steel pursuant to the Agreement. If SBC had advised NCF that the goods and services identified in the invoices were defective, had been rejected, were never delivered, or any issue with Steel's performance on the SBC projects that would raise an issue whether payment by SBC would be forthcoming or even delayed, NCF would not have purchased these invoices and would not have sent funds to Steel, similar to the actions NCF took when SBC was not able to approve Invoice 20020.

9

SBC has made no payment to NCF for the invoices at issue in this lawsuit and the principal balance of $271,464.15 for these invoices remain [sic] due and owing.

The trial court held a hearing on Storage Building's special appearance. During that hearing, Storage Building's counsel advised the trial court that New Century was not alleging that Texas had general jurisdiction over Storage Building. After considering counsel's arguments, the trial court overruled Storage Building's special appearance.

## STANDARD OF REVIEW

A nonresident defendant may challenge a Texas court's personal jurisdiction over it by filing a special appearance. Tex. R. Civ. P. 120a. "Whether a trial court has personal jurisdiction over a nonresident defendant is ultimately a question of law that we review de novo." *Oshman v. Wilkison*, No. 09-23-00201-CV, 2024 Tex. App. LEXIS 1856, at *15 (Tex. App.—Beaumont Mar. 14, 2024, pet. filed) (mem. op.) (citations omitted); *see LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the jurisdiction of a Texas court. *LG Chem*, 670 S.W.3d at 346; *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Booth v. Kontomitras*, 485 S.W.3d

10

461, 476 (Tex. App.— Beaumont 2016, no pet.). If the plaintiff meets this initial burden, the defendant then bears the burden to negate all bases of personal jurisdiction alleged by plaintiff to prevail. *See LG Chem*, 670 S.W.3d at 346 (citing *Kelly*, 301 S.W.3d at 658). The defendant may negate the jurisdictional allegations on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659.

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.* (footnotes omitted). If the plaintiff does not plead facts bringing a defendant within reach of the Texas long-arm statute, the defendant need only prove that it does not live in Texas to negate jurisdiction. *Id.* at 658-59 (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982)); *Booth*, 485 S.W.3d at 476. Thus the "'paradig[m] . . . bases for general jurisdiction[]'" over a foreign entity are its "place of incorporation and principal place of business[.]" *Skylift, Inc. v. Nash*, No. 09-19-00389-CV, 2020 Tex. App. LEXIS 3191, at *8 (Tex. App.— Beaumont Apr. 16, 2020, no pet.) (mem. op.) (citation omitted). Where jurisdictional facts are undisputed, we do not consider any implied findings of fact, instead we

11

consider only the legal question whether the undisputed facts establish Texas jurisdiction. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When reviewing plaintiff's jurisdictional allegations, we ask only whether the allegations are sufficient to invoke the exercise of personal jurisdiction over the defendant regardless of the claims' merits. *See Booth*, 485 S.W.3d at 477. "A court must have personal jurisdiction over a defendant to issue a binding judgment." *LG Chem*, 670 S.W.3d at 346 (citing *Luciano v. SprayFoamPolymers.com*, LLC, 625 S.W.3d 1, 7-8 (Tex. 2021)). Texas courts may exercise jurisdiction over a nonresident as authorized by the Texas long-arm statute and when consistent with federal due-process guarantees. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (Texas long-arm statute); *LG Chem*, 670 S.W.3d at 346; *Luciano*, 625 S.W.3d at 8. The Texas long-arm statute provides that a nonresident does business in the state if the nonresident commits certain acts in Texas, including, but not limited to, the following: 1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; 2) commits a tort in whole or in part in this state; or 3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. An allegation of jurisdiction may satisfy the Texas long-arm statute, but the allegation may not satisfy the United States Constitution. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149 (citation omitted).

12

Therefore, even if a court determines the facts satisfy the Texas long-arm statute, the court must also examine the facts to determine whether the exercise of personal jurisdiction over the defendant comports with due process. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Personal jurisdiction is consistent with due process when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Kelly*, 301 S.W.3d at 657 (citation omitted). The minimum contacts analysis requires "'some act by which the *defendant purposely avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The focus is on defendant's activities and expectations. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). A defendant's contacts may support either general or specific jurisdiction. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010).

## ANALYSIS

In its sole appellate issue, Storage Building argues that the trial court erred in overruling its special appearance because it lacked the purposeful contacts with Texas necessary to establish jurisdiction in this case. Specifically, Storage Building

13

contends that its sole contacts with Texas "were unilaterally created by Steel and [New Century]" and consist of only telephone conversations and email exchanges. Storage Building further notes that Texas courts have "repeatedly rejected" New Century's "directed a tort" theory of specific jurisdiction.

General Jurisdiction

"General jurisdiction is established by a defendant's 'continuous and systematic' contacts that render it 'essentially at home in the forum State,' irrespective of whether the defendant's alleged liability arises from those contacts." *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71 (Tex. 2016) (quoting *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016)); *see also State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023) (citations omitted); *TPC Grp. Litig.*, No. 09-22-00159-CV, 2024 Tex. App. LEXIS 4506, at *46 (Tex. App.—Beaumont June 27, 2024, no pet.) (mem. op.). No evidence establishes that Storage Building had "continuous and systematic" contacts such that it is rendered "essentially at home" in Texas. Therefore, New Century has not shown general jurisdiction over Storage Building in Texas.[2] *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412; *Cornerstone Healthcare*, 493 S.W.3d at 71; *TPC Grp. Litig.*, 2024 Tex. App. LEXIS 4506, at **46–48.

---

[2] New Century does not contend that the State of Texas has general jurisdiction over Storage Building, but instead focuses on establishing specific jurisdiction through Storage Building's alleged minimum contacts with this state.

<u>Specific Personal Jurisdiction</u>

Specific personal jurisdiction applies more narrowly than general jurisdiction. *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). Courts can exercise specific jurisdiction over a nonresident defendant when two conditions are met: (1) the defendant engages in some act by which it purposely avails itself of the privilege of conducting activities in the forum state; and (2) the plaintiff's claims arise out of or relate to those forum contacts. *Id*. at 412-13 (citing *Ford Motor Co.*, 592 U.S. at 359); *Luciano*, 625 S.W.3d at 8–9; *see also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007) (stating specific jurisdiction analysis involves two co-equal components: purposeful availment and relatedness). This kind of personal jurisdiction involves a "'claim-by-claim'" analysis that focuses on the relationships among the defendant, the forum state, and the operative facts of the litigation. *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150); *see BristolMyers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citation omitted); *TV Azteca*, 490 S.W.3d at 42 (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). We consider the "quality and nature of [these] contacts, rather than their number[.]" *Coleman*, 83 S.W.3d at 806 (citation omitted). Here, we examine Storage Building's alleged purposeful conduct and contacts with Texas, rather than another's conduct and contacts with Texas. *See Walden*, 571 U.S.

15

at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."). There must be a substantial connection between the nonresident's contacts and the operative facts of the litigation. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 156. A substantial connection may result, however, from a single purposeful act. *Id.* at 151–52. The operative facts are those on which the trial court will focus to prove the liability of defendant who is challenging jurisdiction. *Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 188 (Tex. App.—Dallas 2015, no pet.).

New Century's Pleadings

We begin by examining New Century's pleadings to determine whether New Century alleged facts "bringing [Storage Building] within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas)[.]" *See Kelly*, 301 S.W.3d at 658–59.

In New Century's Second Amended Petition, its live pleading at the time the trial court overruled Storage Building's special appearance, New Century alleged that Storage Building and the other defendants "failed to pay the balances owed and are in breach of the contract terms and conditions, respective guaranty and NOA's." As to Storage Building, specifically, New Century alleged that Storage Building breached the Notice of Assignment from Steel to New Century by paying Steel's invoices to Steel instead of New Century, thus violating 9.406 of the Texas Business & Commerce Code. *See* Tex. Bus. & Com. Code Ann. 9.406(a). New Century

16

further alleges that Storage Building committed fraud or negligent misrepresentation in Texas by intentionally, knowingly, or negligently approving Steel's invoices, thus "induc[ing]" New Century to purchase those invoices and sustain damages when Storage Building later failed to pay. According to New Century, Storage Building committed torts in Texas when it "directed" false representations into the State of Texas by approving these invoices, and accordingly was considered to be "doing business" in Texas. Since, pursuant to New Century's reasoning, Storage Building was doing business in Texas, it was subject to suit in Texas under the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (defining "doing business" as including "commit[ting] a tort in whole or in part in this state[.]"); *see also Luciano*, 625 S.W.3d at 8 (allowing Texas courts to exercise personal jurisdiction over a nonresident if authorized by the long-arm statue and if consistent with federal due process guarantees) (citations omitted); *Red Box Energy Servs. Pte. Ltd. v. Buck*, No. 09-23-00386-CV, 2025 Tex. App. LEXIS 281, at *11 (Tex. App.—Beaumont Jan. 23, 2025, no. pet.) (citations omitted) (same).

Although we express no opinion on the merits of New Century's tort allegations, we believe that by alleging this tortious conduct by Storage Building, New Century has satisfied the requirement of pleading facts sufficient to bring Storage Building within the scope of the long-arm statute. *See Kelly*, 301 S.W.3d at 658–59 (noting that the plaintiff bears the initial burden of pleading facts, such as

17

that the defendant committed a tort in Texas, sufficient to invoke long-arm jurisdiction in Texas) (citation omitted). Since New Century has met this burden, Storage Building cannot negate jurisdiction by proving that it is not a Texas resident. *See id.* However, Storage Building can negate Texas jurisdiction factually or legally, in the manner described in *Kelly*. *See id*. at 659.

Purposeful Availment

The first prong of specific jurisdiction, purposeful availment, is the "touchstone of jurisdictional due process[.]" *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784. The purposeful availment analysis asks whether "'a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there.'" *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 152). "To show purposeful availment, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum market." *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) (citing *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785). "Where the defendant has 'deliberately' engaged in significant activities within a state, he 'manifestly has availed himself of the privilege of conducting business there.'" *Luciano*, 625 S.W.3d at 9 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)).

We apply three considerations to determine purposeful availment:

18

(1) "[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person";

(2) "The contacts relied upon must be purposeful," not "random, fortuitous, or attenuated"; and

(3) The defendant "must seek some benefit, advantage[,] or profit by availing itself of [Texas's] jurisdiction."

*Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413-14 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151); *Majors Mgmt., LLC v. Price & Co.*, No. 09-17-00063-CV, 2018 Tex. App. LEXIS 1103, at *6 (Tex. App.—Beaumont Feb. 8, 2018, no pet.) (mem. op.). We address these three criteria below.

In its response to Storage Building's special appearance and on appeal, New Century has argued:

> [] Texas has a significant interest in providing a forum for this action because the injured party, NCF, is a Texas resident. Texas is also the location of the corporate headquarters of NCF and principal place of business. . . . Texas law also applies to the claims against Steel and St. Pierre as the underlying agreement between NCF and Steel is subject to Texas law. . . . As for the tort causes of action against SBC, it has not offered any argument that the elements of the causes of action under any other state[']s law are significantly different than Texas law.

> [] NCF can obtain convenient and effective relief in Texas. . . . Witnesses and evidence are also located in Texas, which weighs in favor of the efficient administration of justice factor. (citations omitted)

We will assume without deciding that these assertions are accurate, and that Texas has "a significant interest in providing a forum" for its resident plaintiff, New Century, and that New Century can "obtain convenient and effective relief in" its

19

home state where "[w]itnesses and evidence are located[.]" Regardless of their accuracy, however, these assertions do not contribute to our consideration of Storage Building's special appearance, since it is Storage Building's contacts with Texas, not New Century's contacts, that we consider in evaluating Storage Building's special appearance. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413–14.

Defendant Storage Building's contacts with Texas consist of five emails to New Century approving Steel's invoices and paying two of Steel's invoices. New Century's argument, that these emails and payments constitute torts conferring Texas long-arm jurisdiction over Storage Building, fails to meet the standard since exchanging emails and sending payments to a Texas plaintiff do not establish specific jurisdiction. *See U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977) (concluding trial court could not exercise specific jurisdiction over a nonresident whose contacts included mailing payments to Texas); *Am. Finasco, Inc., v. Thrash*, No. 09-15-00195-CV, 2017 Tex. App. LEXIS 699, at *15 (Tex. App.— Beaumont Jan. 26, 2017, no pet.) (mem. op.) (same); *Oshman*, 2024 Tex. App. LEXIS 1856, at **44–45, 55–56 (emails and telephone calls between a Texas resident and a nonresident do not show purposeful availment) (citations omitted).

On appeal, New Century cites our sister court's opinion in *Glencoe Capital Partners II, L.P. v. Gernsbacher* to support its position that sending payments to Texas and making "misrepresentations" to a Texas resident in Texas will support

20

long-arm jurisdiction in this state. 269 S.W.3d 157, 166–67 (Tex. App.—Fort Worth 2008, no pet.). The *Glencoe* court, however, "focused [its] jurisdictional analysis on Appellants' contacts with Texas, not whether those contacts were tortious." *Id.* at 166. The nonresident defendants "participated in several . . . board meetings" with the resident defendants via telephone, so the court found Texas long-arm jurisdiction based on the defendants' contacts, themselves, not on the "directed a tort" theory of jurisdiction. *See id.* at 166. Since Storage Building was not participating in board meetings with New Century, *Glencoe* is distinguishable from the instant case.

New Century also argues that Storage Building's Texas contacts were not "random, isolated or fortuitous, they were purposeful[.]" Although we agree that Storage Building intentionally e-mailed and paid New Century, it did so at New Century's and Steel's behest, not its own. Storage Building did not seek out New Century in Texas, instead, Steel contacted New Century and New Century then contacted Storage Building. Given the facts presented, Storage Building's contact with Texas was fortuitous since it was Steel's choice to contract with a factoring company in Texas and not Storage Building's choice. Steel's unilateral choice to partner with New Century does not warrant the conclusion that Storage Building made purposeful contacts with Texas. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 788 (holding that responding to a telephone call from the forum state and

sending payment to the forum state do not establish minimum contacts for jurisdictional purposes).

In *Michiana*, the nonresident defendant communicated with the resident plaintiff in response to the plaintiff's inquiries and sent the allegedly defective product to Texas at the plaintiff's request. *See id.* at 784. Here, similarly, "[Defendant] had no contact with Texas or Texans except for the alleged tort." *Id.* at 781. The *Michiana* court considered the potential complications arising from basing Texas jurisdiction on the allegation that the defendant committed a tort in Texas and pondered the idea that if a nonresident defendant were found not to have committed a tort in Texas, the resulting judgment could be void for want of jurisdiction. *See id.* at 790–92. Noting that jurisdiction cannot "turn on whether a plaintiff merely alleges wrongdoing[,]" the court rejected the proposition that courts may establish long-arm jurisdiction on this basis. *See id.* at 791. New Century argues that Texas courts may exercise jurisdiction in this case based on Storage Building allegedly having committed torts in this state, but the *Michiana* holding supports the opposite conclusion: that Texas courts lack jurisdiction to adjudicate this matter since Storage Building lacked sufficient contacts with Texas. *See id.* at 788.

For Texas courts to have jurisdiction over this case, Storage Building must also have sought some "benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* at 785. It did not do so. It was Steel, not Storage Building, that

22

sought a benefit from doing business with a Texas resident. Although New Century contends that Storage Building "gained a benefit and advantage from Texas[,]" New Century has not shown that Storage Building sought this alleged benefit as opposed to having fortuitously "gained" it through the actions of Steel and New Century. The record does not show that Storage Building sought anything from Texas, but instead was the passive recipient of the supposed benefit, Storage Building did not seek any "benefit, advantage, or profit" by "availing" itself of this jurisdiction. *See id.*

Since Storage Building did not have purposeful contacts with Texas, and did not seek some "'benefit, advantage[,] or profit by availing itself of'" this jurisdiction, we conclude that the trial court erred by overruling Storage Building's special appearance. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413–14 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151); *Majors Mgmt.*, 2018 Tex. App. LEXIS 1103, at \*\*21–22.

Since we have determined that Storage Building did not purposely avail itself of Texas jurisdiction, we need not consider the second prong of specific jurisdiction: whether New Century's claim against Storage Building arose out of Storage Building's contacts with this state. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412 (citing *Ford Motor Co.*, 592 U.S. at 359) (setting out the two prongs of specific jurisdiction); Tex. R. App. P. 47.1.

For the above reasons, we sustain Storage Building's sole issue on appeal.

**CONCLUSION**

Having determined that the trial court does not have general or specific jurisdiction over Appellant, we conclude the trial court erred in denying Storage Building's special appearance. Accordingly, we reverse the trial court's order denying Storage Building's special appearance and render the judgment the trial court should have rendered, dismissing New Century's claims against Storage Building for lack of personal jurisdiction. *See* Tex. R. App. P. 43.2(c).

REVERSED AND RENDERED.

JAY WRIGHT
Justice

Submitted on May 8, 2025
Opinion Delivered May 22, 2025

Before Johnson, Wright and Chambers, JJ.